UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

DigiBit LLC,                                          Civil Action No.
a Michigan limited liability company,

        Plaintiff,

v.                                                    **COMPLAINT**

Arkade, Inc.,
a Delaware corporation                               **JURY TRIAL DEMANDED**

        Defendant.

---

Plaintiff, DigiBit LLC, a Michigan limited liability company, by and through its undersigned attorneys, and for its Complaint against Defendant Arkade, Inc., a Delaware corporation, states as follows:

## **PARTIES**

1.    Plaintiff DigiBit LLC (DigiBit) is a Michigan corporation having a principal place of business at 15074 Cranbrook Court, Shelby Township, Michigan 48315.

2.    Defendant Arkade, Inc. (Arkade) is, upon information and belief, a Delaware corporation having a corporate address at 5535 E. Davies Place, Centennial, CO 80122, and a principal place of business at 7040 Jellico Ave., Van Nuys, CA 91406.

## **JURISDICTION AND VENUE**

3.    This Court has jurisdiction over this copyright infringement action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

1

4.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a) because the parties are citizens of different states and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

5.     The Court has jurisdiction over this action under the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

6.     This Court has personal jurisdiction over the breach of contract action pursuant to paragraph 10 of the License Agreement dated April 20, 2019, and paragraph 9.7 of the License and Consulting Agreement dated February 20, 2019.

7.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this district, and because a substantial part of property that is the subject of the action is situated in this district.

## BACKGROUND

8.     DigiBit formed as a Michigan limited liability company on June 22, 2016.

9.     DigiBit finalized initial designs of a unique electronic game system for smart mobile devices using game player movements as game inputs (DigiBit Technology), in the same month of formation.

10.     The DigiBit Technology includes electronic game hardware (DigiBit Electronic Game Hardware), embedded firmware for the DigiBit Electronic Game Hardware, a communication system between the DigiBit Electronic Game Hardware, proprietary game apps, and third-party game apps that run on mobile smart devices such as Android or Apple smartphones.

11.     DigiBit filed a patent application on its DigiBit Technology on August 16, 2016 with the United States Patent and Trademark Office.

12.     Starting June 6, 2016, DigiBit logged man-hours of work expended on the design and development of a working embodiment of the DigiBit Technology. To date, the logged man-hours of work include at least 15,058 man-hours of work dedicated to DigiBit Technology.

13.     On or about July 2016, DigiBit contracted engineering services from Mohammad Uzair, R 120 block 6 gulshan e iqbal Karachi 75300 Pakistan, to develop portions of the DigiBit Electronic Game Hardware, embedded firmware, the communication system, and the proprietary game apps.

14.     On or about December 2016, DigiBit contracted software development services from we.R.play, an entity formed and operated in Islamabad, Pakistan.

15.     On or about September 2016, DigiBit contracted software development services from Chingiz Shakenov, Sankibay Batyr Ave 8, Aktobe city, Republic of Kazakhstan, 010000.

16.     Between June 6, 2016 and December 1, 2019, Colt Correa, member of DigiBit, logged 4,759 man-hours of work for DigiBit, including the development of the DigiBit Technology.

17.     DigiBit started selling its DigiBit Technology in the form of an electronic game system on August 2, 2017.

18.     DigiBit continued designing and developing its DigiBit Technology after the initial introduction of its electronic game system.

19.     Between August 24, 2016 and December 1, 2019, Muhammad Uzair logged 9,182 man-hours of work developing the DigiBit Technology.

20.     Between January 3, 2017 and June 23, 2017, we.R.play logged 865 man-hours of work developing software for the DigiBit Technology.

3

21.     Between November 30, 2016 and January 14, 2017, Chingiz Shakenov logged 252 man-hours of work developing software for the DigiBit Technology.

22.     On or about December 23, 2017, DigiBit contacted SmartTheater (SmartTheater is the predecessor company to Defendant Arkade, Inc.) to inquire about a VR headset produced by SmartTheater to determine whether it could be incorporated into the DigiBit Technology.

23.     On or about January 10, 2017, Colt Correa met with  Joel Kort - CEO of SmartTheater, Chuck Seltzer - COO of SmartTheater, and Joshua Fuchs - CTO of SmartTheater, at the CES trade show in Las Vegas, Nevada.

24.     SmartTheater had an idea for an electronic gun-shaped controller using game player motion as input.

25.     The parties discussed the DigiBit Technology, specifically using game player motion as input and how it might be modified for use  in the electronic gun-shaped controller product  proposed by SmartTheater.

26.     SmartTheater had no electronics or software capabilities to design or build the electronic gun-shaped controller.

27.     SmartTheater needed DigiBit to provide the DigiBit Technology to achieve the capabilities that SmartTheater wanted in the electronic gun-shaped controller, and DigiBit's know-how relating to the manufacturing processes involving electronics.

28.     On August 30, 2018, DigiBit and SmartTheater entered into a Mutual Confidentiality and Nondisclosure Agreement with the express intent to "acquire Intellectual Property … currently owned by [DigiBit], ... ," (Exhibit 1).

29.     On or about September 24, 2018, Arkade was formed in the State of Delaware. On information and belief, Arkade was formed specifically to design, produce, market, and sell the electronic gun-shaped game controller (Blaster) based on the pre-existing DigiBit Technology.

30.     On or about October 30, 2019, Arkade filed foreign corporate documents in the states of Colorado and California.

31.     On information and belief, the assets of SmartTheater were acquired by Arkade. Joel Kort, Joshua Fuchs, and Chuck Seltzer each initially held an officer position in Arkade that was identical to, and at the same time, as their respective positions in SmartTheater.

32.     DigiBit modified its DigiBit's proprietary firmware to create DigiBit Firmware Source Code, which is a part of the DigiBit Technology, to allow an electronic gun-shaped controller to operate within DigiBit Technology.

33.     The copyright for the DigiBit Firmware Source Code was registered on June 28, 2019 having registration number TXu- 2-152-784, (Exhibit 2).

34.     On October 2, 2018, DigiBit and Arkade entered into a Mutual Confidentiality and Nondisclosure Agreement (NDA) with the express intent to "acquire Intellectual Property … currently owned by [DigiBit], … ," (Exhibit 3).

35.     Paragraph 2(iii) of the NDA defines "Confidential Information" as to include in part "information regarding Intellectual Property Rights (as set forth below), proprietary technology and systems, including proprietary ideas, designs, schematics, prototypes, software, code, developer manuals and the like and/or contemplated products and services, research and development, production, costs, profit and margin information."

36.     Paragraph 11 of the NDA states "[t]his Agreement is effective as of the Effective Date. The rights and obligations under this Agreement shall survive its termination and the termination of any negotiations or discussions between the parties in any event for a period of two (2) years.

37.     In addition to the man-hours of work provided by Colt Correa, as of October 18, 2018, DigiBit had invested at least $308,000 toward the development of the DigiBit Technology.

38.     On or about October 18, 2018, DigiBit reallocated all resources from its proprietary electronic game to the Blaster based on the representation of Arkade that Arkade desired to enter a business relationship with DigiBit to utilize the DigiBit Technology, and that Arkade desired to acquire all right, title and interest to the DigiBit Technology.

39.     On or about December 4, 2018, DigiBit and Arkade entered into a Representative Agreement for Arkade to represent the DigiBit Technology developed for the Blaster. This Representative Agreement allowed Arkade to represent a working prototype of the DigiBit Technology to assess market interest. Arkade represented the DigiBit Technology when it presented the DigiBit Technology at several large toy and game industry trade shows.

40.     On or about February 20, 2019, DigiBit and Arkade entered into an Intellectual Property Agreement (Exhibit 4) contemplating, *inter alia*, the assignment of intellectual property from DigiBit to Arkade.

41.     Section 2.2 of the Intellectual Property Agreement states Arkade was to pay DigiBit for the DigiBit Technology.

42.     On or about February 20, 2019, DigiBit and Arkade entered into a License and Consulting Agreement (LCA) contemplating the licensing of DigiBit Technology and for further

Non-Recoverable Engineering services to be performed by DigiBit paid by Arkade to adapt the DigiBit Technology to the Arkade branded products.

43.     Pursuant to the terms of the LCA, DigiBit executed an Assignment of Patent and Intellectual Property Rights (Patent Assignment) on February 22, 2019 transferring rights in the DigiBit Technology to Arkade based on Arkade's assurances that it was going to fulfill its obligations under the Intellectual Property Agreement and the LCA.

44.     On April 1, 2019, DigiBit sent notice to Arkade that it was in breach of the LCA by failing to pay DigiBit $300,000 pursuant to paragraph 2.2 of the LCA. DigiBit acknowledged Arkade had until April 30, 2019 to cure the breach

45.     On or about April 20, 2019, DigiBit and Arkade entered into a License Agreement to replace the LCA, providing *inter alia*, terms by which Arkade could sell its Blaster until the closing of the Intellectual Property Agreement dated February 20, 2019.  The License Agreement dated April 20, 2019 provided that a royalty was to be paid to DigiBit for each Blaster sold after the initial 500 units.

46.     Arkade has not paid DigiBit any royalties pursuant to paragraph 6.b. of the License Agreement dated April 20, 2019.

47.     Based on the negotiations following Arkade's breach of the Intellectual Property Agreement dated February 20, 2019 (Exhibit 6), on April 30, 2019, DigiBit and Arkade entered into an agreement, the Intellectual Property Agreement Amendment #1, amending certain terms in the Intellectual Property Agreement dated February 20, 2019.

48.     On June 16, 2019, DigiBit provided a link, in an email with the subject "Arkade DFU Source Code for Ukraine Developers", to Arkade providing access to the source code for the

DigiBit Connect App , which is a part of the DigiBit Technology. The DigiBit Connect App is an application loaded on a user's mobile device to specifically connect it to the Blaster.

49.     DigiBit registered the copyright for the DigiBit Connect App on December 5, 2020 having registration number TX 8-916-693, (Exhibit 7).

50.     Arkade has not paid the $800,000.00 due under the terms of the Intellectual Property Agreement dated February 20, 2019 and the Intellectual Property Agreement Amendment #1.

51.     On information and belief, Arkade commenced online advertising of its Blaster on or about March 20, 2020.

52.     In order to use the Blaster, a user has to download an Arkade App to be installed on the user's mobile device, such as a phone.

53.     The Arkade App is substantially similar to the DigiBit Connect App.

54.     The Arkade App source code uses DigiBit's Technology.

55.     A portion of the Arkade App source code is copied below (red square emphasis added).

```
15   public DfuProgressListenerJv(Context paramContext, MutableLiveData<FirmwareUpd
16     this.context = paramContext;
17     this.ldState = paramMutableLiveData;
18   }
19
20   public void onDeviceConnected(String paramString) {
21     super.onDeviceConnected(paramString);
22     Timber.d("Connecting to DigiBit", new Object[0]);
23     this.ldState.postValue(FirmwareUpdateState.STARTING.INSTANCE);
24   }
25
26   public void onDfuAborted(String paramString) {
```

8

56.     A portion of the DigiBit Connect App and the Arkade App are shown below in a side-by-side comparison with the DigiBit Connect App shown on the left portion of the screen shot. The Arkade App is substantially similar to the DigiBit Connect App.



57.     Use of words "Connecting to DigiBit" in Arkade's source code is further evidence of copying, as opposed to independent development.

58.      Arkade would have had no reason to include the words "Connecting to DigiBit" if Arkade had written the code independently.

59.     A portion of the DigiBit Connect App sent to Arkade compared to the published Arkade App form the public Google Play Store is shown below.



60.     The Arkade App is substantially similar to the DigiBit Connect App. The variable name "isAliveData" was named by DigiBit.  The numerical values for the variable "{2, 1, 3}" were selected by DigiBit. This is further evidence of copying, as opposed to independent development.

61.     DigiBit designed DigiBit Electronic Game Hardware for its electronic game. DigiBit modified the DigiBit Electronics Hardware for a prototype of the Blaster (DigiBit Blaster Electronics Hardware).

62.     DigiBit sent the DigiBit Blaster Electronic Game Hardware, shown below in paragraph 63, to Arkade.

63.     The hardware used by Arkade, shown below on the right, uses many of the same components and design/arrangement of the DigiBit Blaster Electronic Game Hardware, as is shown below. This is further evidence of Arkade usurping the DigiBit Technology.



**DigiDit Circuit Board**

**Arkade Circuit Board**

64.     On information and belief, Arkade has sold more than 500 units.  According to an Indiegogo campaign, Arkade acquired 1,583 backers for $145,459 for the Blaster as shown at https://www.indiegogo.com/projects/arkade-blaster-the-fps-motion-controller#/     (viewed     on December 22, 2020, a partial screen shot is attached as Exhibit 8). The current retail price of the Blaster is $119.99 based on Arkade's website, https://arkade.games/arkade-motion-blaster/ (viewed on December 22, 2020).  Even at a discounted price likely provided through the Indiegogo campaign, there are more than 500 units sold. All these units were sold after March 2020.

65.     On information and belief, Arkade continues to sell its Arkade Blaster through the domain name https://arkade.games and through other channels of commerce, such as HSN at https://www.hsn.com/products/arkade-portable-360-degree-virtual-reality-motion-blast/9844924?sz=6&sf=EC0221&ac=&utm_source=bing&utm_medium=shopping%20engine&utm_term=&utm_campaign=Bshopping%7CM%7CGeneric%7CElectronics&utm_content=1311717514812351_pla-4585581968126190_9844925.

## COUNT I
## COPYRIGHT INFRINGEMENT

66.     DigiBit realleges by reference the allegations contained in the previous paragraphs of this Complaint as though fully set forth herein.

67.     DigiBit is, and at all relevant times has been, the author and owner of all U.S. copyright rights in the DigiBit Connect App, which is an original work of authorship and comprises copyrightable subject matter under the copyright laws of the United States, 17 U.S.C. §101 *et seq*.

68.     DigiBit is the owner of all right, title, and interest to the U.S. Copyright Registration No. TX 8-916-693 for the DigiBit Connect App, as set forth in paragraph 49 above and Exhibit 7 attached hereto.

69.     As the exclusive owner of the DigiBit Connect App, DigiBit enjoys the exclusive right to, among other things, reproduce the DigiBit Connect App, prepare derivative works based upon the DigiBit Connect App, and distribute copies of the DigiBit Connect App. 17 US.S.C. §§ 101, 106.

70.     On information and belief, Arkade knew that the DigiBit Connect App was DigiBit's proprietary intellectual property.

71.     On information and belief, Arkade knew it did not have rights to use the DigiBit Connect App as Arkade had failed to fulfill its obligations under the Intellectual Property Agreement as Amended by the Intellectual Property Agreement Amendment #1 and the License Agreement dated April 20, 2019.

72.     Arkade had access to the DigiBit Connect App because DigiBit emailed a link to Arkade providing access to the DigiBit Connect App by allowing Arkade to download, view, and copy the source code of the DigiBit Connect App.

73.     DigiBit gave Arkade access to the DigiBit Connect App source code as obligated under the Intellectual Property Agreement as Amended by the Intellectual Property Agreement Amendment #1 and the License Agreement dated April 20, 2019.

74.     On information and belief, Arkade provides a copy of the Arkade App by allowing each purchase of the Blaster to download the Arkade App, which is a substantial copy of the DigiBit Connect App.

75.     For example, and without limitation, the name "DigiBit" was copied directly into the Arkade App Code, as shown in paragraph 55 above. Arkade did not even try to change it.

76.     Because of Arkade's unlawful activities, DigiBit has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law. For example, and without limitation, DigiBit and Arkade are direct competitors in the gaming space as the DigiBit Technology is clearly marketable due to Arkade's sales of its Blaster. The DigiBit Technology could be used by DigiBit or third-party licensees. Arkade's continued infringement of DigiBit's copyright rights in the DigiBit Works has caused and is continuing to cause harm to DigiBit in the form of price erosion, loss of goodwill, loss of competitive position, loss of market share, damage to reputation, and loss of business opportunities. Accordingly, in addition to all other remedies to which it is entitled, DigiBit is entitled to preliminary and/or permanent injunctive relief restraining Arkade, its officers, agents, employees, and all persons acting in concert with them from engaging in further acts of copyright infringement as described herein.

77.     Additionally, as a direct and proximate result of Arkade's copyright infringement, DigiBit has suffered and will continue to suffer monetary loss. Accordingly, DigiBit is also entitled to recover from Arkade the damages it has suffered and will continue to suffer as a result of Arkade's infringement in actual amounts to be proven at trial and including, but not limited to, any and all gains, profits, and advantages Arkade have obtained as a result of their infringement. In the alternative, and where appropriate, DigiBit is entitled to statutory damages pursuant to 17 U.S.C. § 504(c).

## COUNT II

**BREACH OF INTELLECTUAL PROPERTY AGREEMENT AS AMENDED BY THE INTELLECTUAL PROPERTY AGREEMENT AMENDMENT #1**

78.     DigiBit realleges by reference the allegations contained in the previous paragraphs of this Complaint as though fully set forth herein.

79.     DigiBit and Arkade entered into the Intellectual Property Agreement on February 20, 2019.

80.     Due to a breach of the Intellectual Property Agreement dated February 20, 2019, for which notice was provided by DigiBit to Arkade, DigiBit and Arkade entered into the Intellectual Property Agreement Amendment #1.

81.     Under the Intellectual Property Agreement dated February 20, 2019, as Amended by the Intellectual Property Agreement Amendment #1, Arkade was to pay DigiBit $800,000 by January 31, 2020.

82.     Arkade failed to pay DigiBit any of the $800,000 and has taken the DigiBit Connect App as if Arkade owns it.

83.     Arkade has taken the design of the DigiBit Blaster Electronic Game Hardware, access to which was only possible after Arkade convinced DigiBit it would pay for the DigiBit Technology.

84.     On information and belief, Arkade had no intention of paying for the DigiBit Connect App as required under the Intellectual Property Agreement dated February 20, 2019 as Amended by the Intellectual Property Agreement Amendment #1.

85.     Taking the DigiBit Connect App without compensation to DigiBit was not authorized by DigiBit.

86.     DigiBit has suffered and continues to suffer damages in the amount to be proven at trial.

87.     The aforementioned acts of Arkade were willful, oppressive, and malicious. DigiBit is therefore entitled to punitive damages in the amount to be proven at trial.

<u>COUNT III</u>
**BREACH OF THE LICENSE AGREEMENT DATED APRIL 20, 2019**

88.     DigiBit realleges by reference the allegations contained in the previous paragraphs of this Complaint as though fully set forth herein.

89.     On information and belief, Arkade had no intention of paying royalties for each copy of the DigiBit Connect App incorporated into each Blaster sold prior to the closing of the Intellectual Property Agreement as Amended by the Intellectual Property Agreement Amendment #1.

90.     Failing to pay royalties for each copy of the DigiBit Connect App was not authorized by DigiBit.

91.     DigiBit has suffered and continues to suffer damages in the amount to be proven at trial.

92.     The aforementioned acts of Arkade were willful, oppressive, and malicious. DigiBit is therefore entitled to punitive damages in the amount to be proven at trial.

<u>COUNT IV</u>
**BREACH OF THE NDA**

93.     DigiBit realleges by reference the allegations contained in the previous paragraphs of this Complaint as though fully set forth herein.

94.     Arkade entered into the NDA.

95.     The NDA specifically contemplates the sole purpose of the NDA was "that [Arkade] would acquire Intellectual Property (as defined and set forth below) currently owned by [DigiBit], …"

96.     The NDA has terms of confidentiality that continue past any termination.

97.     DigiBit has not terminated the NDA.

98.     Arkade has not terminated the NDA.

99.     The terms of confidentiality are still in place.

100.        On information and belief, Arkade is selling Blasters that include confidential information by because the Blasters and the Arkade App include DigiBit circuit designs and the DigiBit Connect App that was disclosed to Arkade pursuant to the NDA.

101.     DigiBit has suffered and continues to suffer damages in the amount to be proven at trial.

102.     The aforementioned acts of Arkade were willful, oppressive, and malicious. DigiBit is therefore entitled to punitive damages in the amount to be proven at trial.

## COUNT V
## MISAPPROPRIATION OF TRADE SECRETS

103.     DigiBit realleges by reference the allegations contained in the previous paragraphs of this Complaint as though fully set forth herein.

104.     All versions of the DigiBit Blaster Electronic Game Hardware, DigiBit Technology, including the source code for the DigiBit Technology, including the overall architecture and function of the code and its individual modules and their function, product documentation, and procedures for building source code and executables and any and all copies,

paper and electronically-stored, of these are proprietary DigiBit trade secrets within the meaning of the Michigan Uniform Trade Secrets Act (DigiBit Trade Secrets).

105. The confidential DigiBit Blaster Electronic Game Hardware, DigiBit Technology, and DigiBit Trade Secrets supplied to Arkade are unique property constituting trade secrets of DigiBit and were supplied to Arkade in confidence under restraints against use, sale, lease, or disclosure set forth in the NDA and all the Agreements set forth above between DigiBit and Arkade.

106. DigiBit has taken reasonable efforts to maintain the secrecy of the DigiBit Blaster Electronics Hardware, DigiBit Technology, and DigiBit Trade Secrets. The NDA signed by Arkade, requires Arkade not to copy or reproduce confidential information other than as contemplated between the parties.

107. Pursuant to the NDA and License Agreements Arkade knew the disclosed confidential DigiBit Blaster Electronic Game Hardware, DigiBit Technology, and DigiBit Trade Secrets are DigiBit's trade secrets.

108. Arkade induced DigiBit to share confidential DigiBit Blaster Electronic Game Hardware, DigiBit Technology, and DigiBit Trade Secrets with Arkade by executing the Agreements wherein Arkade agreed to compensate DigiBit for use of the DigiBit Blaster Electronic Game Hardware, DigiBit Technology, and DigiBit Trade Secrets supported in paragraphs 39 - 42.

109. Arkade failed to fulfill the terms of the NDA and continues to fail to fulfill the terms of the NDA.

110. Arkade failed to fulfill the terms of all other Agreements with DigiBit.

111.   Because Arkade failed to fulfill the terms of the NDA and Agreements, Arkade knowingly and improperly used DigiBit Blaster Electronic Game Hardware, DigiBit Technology, and DigiBit Trade Secrets without DigiBit's consent to develop one or more of Arkade's products, thereby misappropriating the DigiBit Trade Secrets and continuing to do so with each sale of the Arkade Blaster including the Arkade App.

112.   Arkade sold the Blasters that utilize DigiBit Trade Secrets through the Indiegogo internet platform and continues to sell its Blasters on its own website https://arkade.games and through third-party websites. Each sale constitutes a separate act of misappropriation of the DigiBit Trade Secrets.

113.   Arkade benefited greatly from the DigiBit Trade Secrets. Arkade saved substantial amounts of time and money by using DigiBit's proprietary information including the source code for one or more Products, or other product documentation or procedures to develop competing products. Indeed, the DigiBit Trade Secrets have enabled Arkade to launch products, in substantially less time and with far fewer resources than it took DigiBit.

114.   As a direct and proximate result of Arkade's misappropriation of the DigiBit Trade Secrets, DigiBit has sustained enormous economic harm. Arkade's conduct has caused DigiBit direct all resources away from DigiBit's own electronic game, causing DigiBit to lose sales, marketing, and time to grow its market share.

115.   DigiBit is entitled to enhanced damages and attorneys' fees under the Michigan Trade Secrets Act because of Arkade's willful and malicious misappropriation of the DigiBit Trade Secrets.

116.    As a direct and proximate result of Arkade's illegal actions, DigiBit has sustained irreparable harm. Arkade's conduct is causing and, unless enjoined by this Court, will continue to cause DigiBit great and irreparable injury that cannot fully be compensated or measured by money damages. DigiBit has no adequate remedy at law. DigiBit is entitled to a permanent injunction requiring Arkade to eliminate continued misappropriation of the DigiBit Trade Secrets.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff DigiBit respectfully requests that this Honorable Court:

A.    Preliminarily and permanently enjoin Defendant Arkade, its agents, servants, employees, privies, successors, and assigns, and all claiming any rights through it, from manufacturing, marketing, or selling the Blaster, its Arkade App, or any other products including the DigiBit Connect App;

B.    Order Arkade to recall and surrender for destruction all Blasters, Arkade Apps, advertisements, and other materials constituting copyright infringement and/or breach of contract against DigiBit's rights;

C.    Order Arkade to remove the Arkade App from any and all online stores;

D.     Order Arkade, pursuant to 17 U.S.C. §502(a), to file with this Court and serve upon DigiBit within thirty (30) days after entry of the injunction a written report under oath describing in detail the manner and form in which Arkade has complied with the injunction, including ceasing all offering of Blasters and Apps with DigiBit Works as set forth above;

E.     Order the Patent Assignment void *ab inititio*;

F.      Award DigiBit compensatory and exemplary damages for the Counts stated herein, including income and profits DigiBit lost and may lose in the future as a result of Arkade's unlawful activities including copyright infringement and breach of contract; together with any costs;

G.      Award DigiBit any additional damages to which it is entitled for Arkade's copyright infringement and breach of contract;

H.      Award DigiBit costs and reasonable attorneys' fees under 17 U.S.C. §504 and the Michigan Uniform Trade Secrets Act, MCL §445.1905;

I.      Preliminarily and permanently enjoin Arkade, its agents, servants, employees, privies, successors, and assigns, and all claiming any rights through it, from breaching the agreements between the parties;

J.      Enter judgment for DigiBit on all claims for relief asserted in the Complaint in an amount to be proven at trial, including punitive damages;

K.      Enter judgment in favor of DigiBit for pre-judgment and post-judgment interest at the legal rate;

L.      Award DigiBit reasonable attorney's fees and expenses of litigation;

M.      Assess all costs against Arkade;

N.      Grant DigiBit such and other further relief that the Court deems just and equitable.

## JURY DEMAND

Plaintiff DigiBit, LLC hereby demands a trial by jury on all issues so triable.


Respectfully Submitted,

Dated:  December 22, 2020

/s/ David J. Simonelli
David J. Simonelli (P47221)
**SIMONELLI IP, PLLC**
PO Box 935
Birmingham, MI 48012-0935
Telephone:  248-252-7435
david@simonelliip.com

Joseph G. Burgess (P41621)
**BURGESS LAW OFFICE, PLLC**
PO Box 214320
Auburn Hills, MI 48321-4320
Telephone:  248-364-0200
jburgess@burgessiplaw.com

*Attorneys for Plaintiff*